**DALE L. HILDEBRAND,**

       Plaintiff,

v.

**CAROLYN W. COLVIN,**
Commissioner of Social
Security,

       Defendant.

**No. 13-CV-3037-DEO**

**ORDER**

_____

    This matter is before the Court pursuant to Dale Hildebrand's [hereinafter Mr. Hildebrand] application for supplemental security income (SSI). The parties appeared for a hearing on March 25, 2014. After considering the parties' arguments, the Court took the matter under advisement and now enters the following.

## I.  FACTUAL BACKGROUND

    Mr. Hildebrand was born in 1958. He was 50 years old on the alleged onset date, and was 53 at the time of the ALJ's decision. He lives with his girlfriend in Cedar Falls, Iowa. He is divorced and has little contact with his children (one of whom is deceased). Mr. Hildebrand has limited education. He took special education classes in high school, dropped out

in the 11th grade, went into the army, and eventually got a GED. Mr. Hildebrand's past relevant work included work as a tractor-trailer truck driver and shag driver. Most of his adult jobs have involved truck driving. He has not worked since prior to his alleged onset date in 2008.

Mr. Hildebrand claims disability based on diabetes, specifically pain and sensation loss in extremities caused by the diabetes, and various mental and emotional issues.

## II. PROCEDURAL HISTORY

Mr. Hildebrand filed his application for supplemental security income on April 30, 2009, alleging an onset date of December 1, 2008. The Social Security Administration denied Mr. Hildebrand's application on March 24, 2010, and upon reconsideration August 5, 2010. On January 9, 2012, Mr. Hildebrand appeared for telephonic hearing before an Administrative Law Judge (ALJ). ALJ David Buell heard Mr. Hildebrand's claim and denied it on February 7, 2012. Mr. Hildebrand appealed to the Appeals Council, who denied his claim on June 25, 2013. Mr. Hildebrand filed the present Complaint on August 1, 2013.

The ALJ set out the issue presently before the Court:

> [t]he issue is whether the claimant is disabled under section 1614(a)(3)(A) of the Social Security Act. Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. Although supplemental security income is not payable prior to the month following the month in which the application was filed (20 CFR 416.335), the undersigned has considered the complete medical history consistent with 20 CFR 416.912(d).

Docket No. 7, Tr. 11.

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and entitled to benefits. 20 C.F.R. § 404.1520. The five successive steps are: (1) determination of whether a plaintiff is engaged in "substantial gainful activity," (2) determination of whether a plaintiff has a "severe medically determinable physical or medical impairment" that lasts for at least 12 months, (3) determination of whether a plaintiff's impairment or combination of impairments

meets or medically equals the criteria of a listed impairment, (4) determination of whether a plaintiff's Residual Functional Capacity (RFC) indicates an incapacity to perform the requirements of their past relevant work, and (5) determination of whether, given a Plaintiff's RFC, age, education and work experience, a plaintiff can "make an adjustment to other work." 20 C.F.R. § 404.1520(4)(i-v).

At step one, if a plaintiff is engaged in "substantial gainful activity" within the claimed period of disability, there is no disability during that time. 20 C.F.R. § 404.1520(a)(4)(i). At step 2, if a plaintiff does not have a "severe medically determinable physical or mental impairment" that lasts at least 12 months, there is no disability. 20 C.F.R. § 404.1520(a)(4)(ii). At step 3, if a plaintiff's impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, and last at least 12 months, a plaintiff is deemed disabled. 20 C.F.R. § 404.1520(e). Before proceeding to step 4 and 5, the ALJ must determine a plaintiff's Residual Functional Capacity [RFC]. RFC is the "most" a person "can still do" despite their limitations. 20 C.F.R. §

404.1545(a)(1). The RFC an ALJ assigns a plaintiff has been referred to as the "most important issue in a disability case . . . ." Malloy v. Astrue, 604 F. Supp. 2d 1247, 1250 (S.D. Iowa 2009) (citing McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir. 1982)(en banc) *abrogated on other grounds* by Higgins v. Apfel, 222 F.3d 504, 505 (8th Cir. 2000)). When determining RFC, the ALJ must consider all of the relevant evidence and all of the Plaintiff's impairments, even those which are not deemed severe, as well as limitations which result from symptoms, such as pain. 20 C.F.R. § 404.1545(a)(2) and (3). An ALJ "may not simply draw his own inferences about a plaintiff's functional ability from medical reports." Strongson v. Barnhart, 361 F.3d 1066, 1070 (8th Cir. 2004).

At step 4, if, given a plaintiff's RFC, a plaintiff can still perform their past relevant work, there is no disability. 20 C.F.R. § 404.1520(a)(4)(iv). At step 5, if, given a plaintiff's RFC, age, education, and work experience, a plaintiff can make an adjustment to other work, there is no disability. 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(a)(4)(v). This step requires the ALJ to provide

"evidence" that a plaintiff could perform "other work [that] exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2). In other words, at step 5, the burden of proof shifts from a plaintiff to the Commissioner of the S.S.A. Basinger v. Heckler, 725 F.2d 1166, 1168 (8th Cir. 1984). The ALJ generally calls a Vocational Expert (VE) to aid in determining whether this burden can be met.

In this case, the ALJ applied the appropriate methodology and found that Mr. Hildebrand had not engaged in substantial gainful employment since April 30, 2009. The ALJ stated that Mr. Hildebrand has severe impairments including diabetes mellitus and affective disorder. However, the ALJ found that Mr. Hildebrand did not suffer from a disability as contemplated by the Social Security Code. Specifically, the ALJ stated:

> [t]he claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926). The claimant's representative has not introduced evidence or advanced an argument supporting a conclusion that any of the claimant's impairments meet or medically equal a listed impairment. After a review of the entire record, the undersigned finds the

> evidence does not establish that the
> claimant has an impairment or combination
> of impairments that meets or medically
> equals any of the listed impairments in 20
> CFR Part 404, Subpart P, Appendix 1.

Docket No. 7, Tr. 13. The ALJ considered Mr. Hildebrand's

mental impairments using the "paragraph B" criteria and the

"paragraph C" criteria as set out in 20 CFR Part 404, Subpart

P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926), and

determined that Mr. Hildebrand's mental impairment did not

meet either set of requirements. Docket No. 7, Tr. 14.

The ALJ went on to consider residual functional capacity

and concluded:

> [a]fter careful consideration of the entire
> record, the undersigned finds that the
> claimant has the residual functional
> capacity to perform light work as defined
> in 20 C.F.R. § 416.967(b) except he cannot
> operate foot controls; he must avoid
> exposure to hazards such as work at
> unprotected heights or work near unguarded
> moving machinery; he is limited to
> performing simple, repetitive, and routine
> work that does not require any close
> attention to detail or the use of
> independent judgment; he should not
> interact with the general public; he should
> have only occasional and superficial
> interaction with co-workers so he is unable
> to perform work that requires him to work
> as a team or cooperate with co-workers; and
> he can occasionally, up to one-third of the
> time, be physically present with

co-workers, but he cannot work jointly with them.

Docket No. 7 Tr. 15. The ALJ then considered the plaintiff's credibility under the <u>Polaski</u> standard and stated:

> [t]he claimant alleges disability based on his depression, difficulty standing without leg pain, and diabetes mellitus with peripheral neuropathy in his hands and feet (Exhibits 2E/2; 7E/1; and 11E/1). At the hearing, he testified he was fired from his last job as a truck driver due to his anger control problems, insulin-dependent diabetes mellitus, and because his employer believed he tried to run someone over with his truck. He reported difficulty being around a lot of people, anger control problems, memory problems, difficulty standing for extended periods of time, and diabetes mellitus with lower extremity pain and numbness as well as tingling in his fingers, hands, and feet. He also testified he does not like to leave the house and spends two to three days per week in bed.
>
> With regard to treatment, he testified he has been taking insulin once a day for three years for his diabetes, which causes dizziness. However, he also stated he does not go to the doctor as much as he should due to financial constraints. As for his residual functional capacity, he stated he could walk 1 ½ blocks and stand for five to ten minutes at a time. Finally, he testified he could shop for groceries, prepare meals, provide for his own personal care, wash the dishes, and vacuum. The claimant's girlfriend and roommate, Jane Remley, similarly testified the claimant

could not work due to his anxiety, anger control problems, mood swings, and auditory hallucinations. Ms. Remley further testified the claimant has multiple personalities and that recently a personality named "Bob" has taken over, but there is no objective medical evidence to support any psychosis or multiple personality disorder. Additionally, Ms. Remley testified the claimant spends most of the day sleeping and does not perform any household chores.

The claimant's medically determinable impairments could reasonably be expected to cause at least some of the symptoms he alleged. However, his statements and the statements of Ms. Remley concerning the intensity, persistence, and limiting effects of these symptoms are not fully credible.

Docket No. 7, Tr. 15-16.

The ALJ found significant Mr. Hildebrand's medical history, and gave substantial weight to the report of Dr. Beverly Westra, a state agency medical consultant. Docket No. 7, Tr. 18. The ALJ gave very little "other source" weight to the opinion of physician's assistant Esther Bahlman, who opined that Mr. Hildebrand would likely be unable to work. Docket No. 7, Tr. 20. The ALJ then stated:

[b]ecause a claimant's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, the

> undersigned must consider in addition to
> the objective medical evidence when
> assessing the credibility of the claimant's
> statements: the claimant's work history;
> daily activities; the location, duration,
> frequency, and intensity of the claimant's
> pain or other symptoms; factors that
> precipitate or aggravate the symptoms; the
> type, dosage, effectiveness, and side
> effects of any medication the claimant
> takes or has taken to alleviate pain or
> other symptoms; treatment, other than
> medication, the claimant receives or has
> received for relief of pain or other
> symptoms; and any factors concerning the
> claimant's functional limitations and
> restrictions due to pain or other
> symptoms...

Docket No. 7, Tr. 20. The ALJ stated that Mr. Hildebrand's activities of daily living were inconsistent with his disability claim and that his medical treatment has been "infrequent." Docket No. 7, Tr. 20-21. The ALJ also noted Mr. Hildebrand's sporadic work history. Docket No. 7, Tr. 21. Additionally, it is clear that the ALJ did not find Mr. Hildebrand's testimony persuasive and noted several perceived inconsistencies in the record. Docket No. 7, Tr. 21-22. Regarding the RFC, the ALJ concluded:

> [b]ased on the totality of the evidence,
> the undersigned finds the claimant has the
> residual functional capacity to perform
> light work except he cannot operate foot
> controls; he must avoid exposure to hazards

such as work at unprotected heights or work
near unguarded moving machinery; he is
limited to performing simple, repetitive,
and routine work that does not require any
close attention to detail or the use of
independent judgment; he should not
interact with the general public; he should
have only occasional and superficial
interaction with co-workers so he is unable
to perform work that requires him to work
as a team or cooperate with co-workers; and
he can occasionally, up to one-third of the
time, be physically present with
co-workers, but he cannot work jointly with
them.

Docket No. 7, Tr. 22.

Based on his RFC, the ALJ concluded that Mr. Hildebrand
could not return to past relevant work. However, the ALJ
concluded that:

[b]ased on the testimony of the vocational
expert, the undersigned concludes that,
considering the claimant's age, education,
work experience, and residual functional
capacity, the claimant is capable of making
a successful adjustment to other work that
exists in significant numbers in the
national economy. A finding of "not
disabled" is therefore appropriate under

> the framework of the above-cited rule. The
> claimant has not been under a disability,
> as defined in the Social Security Act,
> since April 30, 2009, the date the
> application was filed (20 CFR 416.920(g)).

Docket No. 7, Tr. 23.

## III.  STANDARD OF REVIEW

This Court's role in review of the ALJ's decision requires a determination of whether the decision of the ALJ is supported by substantial evidence in the record as a whole. See 42 U.S.C. § 405(g); Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008). Substantial evidence is less than a preponderance but enough that a reasonable mind might find it adequate to support the conclusion in question. Juszczyk v. Astrue, 542 F.3d 626, 631 (8th Cir. 2008) (citing Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007)). This Court must consider both evidence that supports and detracts from the ALJ's decision. Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006) (citing Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)). In applying this standard, this Court will not reverse the ALJ, even if it would have reached a contrary decision, as long as substantial evidence on the record as a whole supports the ALJ's decision. Eichelberger v. Barnhart,

390 F.3d 584, 589 (8th Cir. 2004). The ALJ's decision shall be reversed only if it is outside the reasonable "zone of choice." Hacker v. Barnhart, 459 F.3d 934, 936 (8th Cir. 2006) (citing Culbertson v. Shalala, 30 F.3d 934, 939 (8th Cir. 1994)).

This Court may also ascertain whether the ALJ's decision is based on legal error. Lauer v. Apfel, 245 F.3d 700, 702 (8th Cir. 2001). If the ALJ applies an improper legal standard, it is within this Court's discretion to reverse his/her decision. Neal v. Barnhart, 405 F.3d 685, 688 (8th Cir. 2005); 42 U.S.C. 405(g).

## IV. ISSUES

In his brief, Mr. Hildebrand makes two primary arguments. First, Mr. Hildebrand argues that the ALJ erred in the credibility determination regarding Mr. Hildebrand's subjective allegations. Next, Mr. Hildebrand argues that the ALJ erred in discounting certain medical evidence. The Court will address these issues below.

## V. ANALYSIS

In order for a plaintiff to qualify for disability benefits, they must demonstrate they have a disability as

defined in the Social Security Act [hereinafter the Act]. The Act defines a disability as an:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .

42 U.S.C. § 423(d)(1)(A).

## A. Credibility

The first argument the Court will address is about the Plaintiff's credibility and the ALJ's credibility determination. The standard regarding credibility findings is well settled. "In order to assess a claimant's subjective complaints, the ALJ must make a credibility determination by considering the claimant's daily activities; duration, frequency, and intensity of the pain; precipitating and aggravating factors; dosage, effectiveness and side effects of medication; and functional restrictions." Mouser v. Astrue, 545 F.3d 634, 638 (8th Cir. 2008) citing Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ may not discount subjective complaints solely because they are not supported by objective medical evidence. An ALJ must have sufficient

justification for doubting a claimant's credibility. See
Wildman v. Astrue, 596 F.3d 959, 968 (8th Cir. 2010) (quoting
Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007)).
However, "[a] disability claimant's subjective complaints of
pain may be discounted if inconsistencies in the record as a
whole bring those complaints into question." Gonzales v.
Barnhart, 465 F.3d 890, 895 (8th Cir. 2006).

As stated above, the ALJ may only discount the
plaintiff's complaints if they are inconsistent with the
record as a whole. Mr. Hildebrand testified that his
depression prevents him from being able to work. Docket No.
7, Tr. 41. He testified that he cannot handle being around
people. Id. He also testified that he has memory issues, and
anger issues. Docket No. 7, Tr. 42-43. The Court notes that
Mr. Hildebrand appeared both confused and subtly hostile
during the ALJ hearing. See Docket No. 7, Tr. 40-43.
Additionally, Mr. Hildebrand testified that, because of his
diabetes, his hands and feet are numb. Accordingly, he has a
hard time using his hands. Docket No. 7, Tr. 43. Mr.
Hildebrand stated that he could only be on his feet for five
or ten minutes at a time without having to sit down. Docket

No. 7, Tr. 45.  He testified that he has pain in his hands, feet and legs that feel like needles poking him.  Docket No. 7, Tr. 45-46.

The Defendant contends that the ALJ properly considered and discounted Mr. Hildebrand's testimony.  Specifically, the Defendant argues:

> [t]he ALJ properly considered the credibility of plaintiff's subjective allegations, and found these allegations were not fully credible (Tr. 16).  The ALJ articulated the inconsistencies on which he relied, including inconsistencies between the objective medical evidence and plaintiff's subjective allegations; the conservative and infrequent nature of his treatment; plaintiff's noncompliance with treatment; his poor work history; and his activities of daily living (Tr. 15-22)... [T]he objective medical evidence demonstrated "routine, infrequent, and conservative" treatment for these complaints, with repeated periods of noncompliance with treatment (Tr. 20-21).  The ALJ properly considered that plaintiff's treatment for his allegedly disabling diabetes with peripheral neuropathy was not consistent with his allegations of disabling symptoms that left him mostly homebound (Tr. 15-17, 20-21)... The ALJ also properly considered that plaintiff's work history showed only sporadic work prior to his alleged disability onset date (Tr. 21)... The ALJ [also] properly considered plaintiff's noncompliance with treatment and the frequency of his treatment for his

> allegedly disabling impairments... the ALJ
> [also] properly considered that plaintiff's
> activities of daily living were not
> consistent with his allegations of
> disabling limitations (Tr. 20)... [T]he
> ALJ [also] expressly considered the
> statements and testimony of Ms. Remley, but
> found they were not fully credible, for the
> same reasons as plaintiff's allegations
> were not fully credible (Tr. 16)...

Docket No. 13, p. 11, 13, 15, 16, 17, 18.

First, both the ALJ and the Defendant rely on the fact that Mr. Hildebrand does some limited work (such as preparing meals and shopping) to support the ALJ's conclusion that Mr. Hildebrand can return to his past relevant work. Docket No. 13, p. 20. However, courts have repeatedly stated that the "limited ability to complete light housework and short errands does not mean [a claimant] has 'the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world.'" Tilley v. Astrue, 580 F.3d 675, 682 (8th Cir. 2009) citing McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir. 1982) (en banc) *abrogated on other grounds* by Higgins v. Apfel, 222 F.3d 504, 505 (8th Cir. 2000). There is no requirement that an applicant be "completely bedridden" or "unable to perform any household chores to be considered

disabled." <u>Ludden v. Bowen</u>, 888 F.2d 1246, 1248 (8th Cir. 1989), quoting <u>Easter v. Bowen</u>, 867 F.2d 1128 (8th Cir. 1989).

Mr. Hildebrand testified that he does little around the house, other than watch TV or write things in his journal. Docket No. 7, Tr. 39. He testified that he does not do much housework. He testified that if he tries to do dishes, he has to get a chair because of severe pain in his legs. Docket No. 7, Tr. 43. He cannot keep up with his personal hygiene because of his depression. Docket No. 7, Tr. 50. As will be discussed below, this testimony is supported by Ms. Remley. (The Court notes that Ms. Remley would not testify in front of Mr. Hildebrand and asked he leave the room before she spoke.) It is true that Mr. Hildebrand stated that he thought he could live on his own. However, it seems likely this was a claim grounded in Mr. Hildebrand's desire to 'seem' tough and independent. (There is no doubt from the record that Mr. Hildebrand has aggressive tendencies, he was fired from one job because of allegedly assaulting another employee and police have been called to defuse domestic situations between Mr. Hildebrand and Ms. Remley.) But, setting asides Mr. Hildebrand's assertion that he could live alone, the facts are

that he cannot function on his own.  In his recent life, he
has shuttled between his sister's house and his girlfriend's
house.  His testimony is that he cannot do work around the
house.  Ms. Remley passionately asserts the same thing.  Even
the ALJ noted that Mr. Hildebrand appeared unkept during the
hearing.  Quite simply, substantial evidence does not support
the ALJ's conclusion that Mr. Hildebrand's activities of daily
living were inconsistent with his alleged disability.

On a highly related note, the ALJ discounted Ms. Remley's
statements about the Plaintiff's condition.  Ms. Remley, who
seems to exist somewhere between Mr. Hildebrand's girlfriend
and his care-taker, testified that Mr. Hildebrand could not
maintain steady employment because of his emotional issues.
Docket No. 7, Tr. 55.  She testified that he is incapable of
doing even simple yard work.  Docket No. 7, Tr. 55.  She
testified that Mr. Hildebrand's emotional outbursts are so
severe that law enforcement have been called to their home in
the past.  Docket No. 7, Tr. 58.  Mr. Hildebrand has made both
suicidal and homicidal threats.  Docket No. 7, Tr. 58-59.  The
8th Circuit Court of Appeals has stated, "statements of lay
persons regarding a claimant's condition must be considered

when an ALJ evaluates a claimant's subjective complaints of pain. " <u>Willcockson v. Astrue</u>, 540 F.3d 878, 880-81 (8th Cir. 2008). That Court went on to say, "witnesses such as the family members who gave statements here often may be the only ones who witness a claimant's difficulties; though the ALJ is of course not required to accept all lay testimony, we think that it is almost certainly error simply to ignore it altogether." <u>Willcockson</u>, 540 F.3d at 881. In this case, even though the ALJ referenced Ms. Remley's testimony, he ignored it without sufficient justification. The testimony seems remarkably consistent, or perhaps even more emphatic, than Mr. Hildebrand's, and her testimony made clear that Mr. Hildebrand is unable to do much in the way of work and his activities have been substantially restricted by diabetes and his mental health situation. The ALJ's decision to discredit Ms. Remley's testimony is not supported by substantial evidence.

Additionally, the ALJ noted that Mr. Hildebrand's treatment history has been 'inconsistent.' Mr. Hildebrand stated that he does not have the funds to go to the doctor as often as he needs to. Docket No. 7, Tr. 49-50. As has been

repeatedly stated, "[t]o a poor person, medicine that he cannot afford to buy does not exist." Lovelace v. Bowen, 813 F.2d 55, 59 (5th Cir. 1987). In Tome v. Schweiker, the Eighth Circuit Court of Appeals reversed the district court's finding of no disability because the claimant "did not consciously decide not to follow 'doctor's orders,' but rather lacked the financial resources and the discipline and education needed to understand and follow her [medical regime]." 724 F.2d 711, 713-14 (8th Cir. 1984); see also Agan v. Astrue, 922 F. Supp. 2d 730, 753 (N.D. Iowa 2013). There is no serious argument that Mr. Hildebrand has the funds to go the doctor as often as may be necessary. Nor does Mr. Hildebrand, who has no driver's license and relies on his sister and his girlfriend to get around, necessarily have a means of transportation to get to the doctor.

Finally, as will be discussed more fully in the following sections, Mr. Hildebrand's testimony is supported by the medical evidence in this case. Accordingly, substantial evidence does not support the ALJ's decision to give little weight to Mr. Hildebrand's subjective allegations/testimony regarding his disability. In fact, Mr. Hildebrand's

statements regarding his disability are substantially supported by the record in this case. The ALJ's determination was not supported by substantial evidence and was an error. Because Mr. Hildebrand testified credibly about his pain, and that testimony was supported by the medical evidence, the limitations outlined by Mr. Hildebrand should have been incorporated into the question posed to the vocational expert.

## B. Medical Evidence

The Plaintiff also argues that the ALJ failed to give credit to certain medical evidence. Specifically, the Plaintiff argues:

> Dr. Paul M. Conditt conducted a psychological evaluation on March 1, 2010... Dr. Conditt diagnosed Mr. Hildebrand with a Major Depressive disorder, recurrent and severe, with a GAF of 45. Dr. Conditt noted Mr. Hildebrand's depression was worsening as his pain level increased. The claimant became more isolated. Mr. Hildebrand's condition was worsening as the claimant was unable to afford his medication. (A.R. 298) Dr. Conditt concluded Mr. Hildebrand's ability to carry out instructions, and maintain concentration was poor due to depression. The claimant's pace was significantly limited by leg and back pain. Mr.

>Hildebrand's ability to interact
>appropriately with supervisors, co-workers,
>and the public was limited due to extreme
>agitation and liberal use of profanity in
>conversation.

Docket No. 11, p. 15, 16. The Plaintiff argues that, as an examining source, Dr. Conditt's opinion was entitled to more weight than the ALJ gave it. In his opinion, the ALJ stated he gave Dr. Conditt's opinion 'some' weight. Docket No. 7, Tr. 18.

As has been repeatedly stated:

>[t]he opinion of a treating physician
>should not ordinarily be disregarded and is
>entitled to substantial weight. A treating
>physician's opinion regarding an
>applicant's impairment will be granted
>controlling weight, provided the opinion is
>well-supported by medically acceptable
>clinical and laboratory diagnostic
>techniques and is not inconsistent with the
>other substantial evidence in the record.

Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000). Additionally, the opinions of an examining physician should be given greater weight than the opinions of a source who had not examined the claimant. See Shontos v. Barnhart, 328 F.3d 418, 425 (8th Cir. 2003), citing 20 C.F.R. § 404.1527(d)(1) (now 20 C.F.R. §404.1527(c)). It seems from the records that Dr. Conditt was an examining source, but not a treating a source.

Thus, in the hierarchy of medical sources, he falls somewhere in the middle. (Not quite as good as a treating source, better than a source who only consulted records.) Instead of giving substantial weight to Dr. Conditt, the ALJ gave substantial weight to Dr. Greenfield, a medical consultant who reviewed Mr. Hildebrand's records, and Dr. Westra, a medical consultant who examined Mr. Hildebrand's files.

While Dr. Conditt's evaluation is not controlling, the Plaintiff is correct that it is consistent with the medical records in this case. See, for example, the treatment notes of Dr. William Crowley, who noted a GAF score of 51 and stated, "[d]ue to the severity of the disorder and particularly the psychosocial stressors and co-morbidities, it is anticipated [Mr. Hildebrand] will be in treatment for an extended period."[12]  Docket No. 7, Tr. 365.  In fact, Dr. Crowley, who was a treating source, continually opined that

---

[1]  The Court is aware that under the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-5), GAF scores are no longer a valid diagnostic tool.  However, the use of such scores in this case predate the new diagnostic regime.

[2]  The Court believes that in Dr. Conditt's context, co-morbidities simply means 'related issues.'

Mr. Hildebrand will require long term treatment of his issues.
See Docket No. 7, Tr. 345.

Additionally, the ALJ discounted the opinion of nurse
practitioner Esther Bahlman.  Ms. Bahlman noted that Mr.
Hildebrand has 'multiple medical and psychiatric issues' and
opined that Mr. Hildebrand could not work.  Although it runs
contrary to the current trends in medicine, the Social
Security regulations do not recognize nurse practitioners as
treating sources.  Accordingly, Ms. Bahlman is 'another
source.'  The 8th Circuit has given explicit instruction
regarding the weight given to other sources:

> [o]n August 9, 2006, the SSA issued Social
> Security Ruling (SSR) 06-03p, 71 Fed. Reg.
> 45,593 (Aug. 9, 2006).  The ruling
> clarified how it considers opinions from
> sources who are not what the agency terms
> "acceptable medical sources."  Social
> Security separates information sources into
> two main groups:  acceptable medical
> sources and other sources.  It then divides
> other sources into two groups:  medical
> sources and non-medical sources. 20 C.F.R.
> §§ 404.1502, 416.902 (2007).  Acceptable
> medical sources include licensed physicians
> (medical or osteopathic doctors) and
> licensed or certified psychologists.  20
> C.F.R. §§ 404.1513(a), 416.913(a) (2007).
> According to Social Security regulations,
> there are three major distinctions between
> acceptable medical sources and the others:
> (1) Only acceptable medical sources can
> provide evidence to establish the existence
> of a medically determinable impairment,
> id., (2) only acceptable medical sources

can provide medical opinions, 20 C.F.R. §§
404.1527(a)(2), 416.927(a)(2) (2007), and
(3) only acceptable medical sources can be
considered treating sources, 20 C.F.R. §§
404.1527(d) and 416.927(d) (2007).  Other
sources:  Medical sources include nurse
practitioners,     physician     assistants,
licensed    clinical    social    workers,
naturopaths, chiropractors, audiologists,
and    therapists.      Non-medical    sources
include    school    teachers    and    counselors,
public  and  private  social  welfare  agency
personnel,     rehabilitation     counselors,
spouses,  parents  and  other  caregivers,
siblings,    other    relatives,    friends,
neighbors,  clergy,  and  employers.      20
C.F.R. §§ 404.1513(d), 416.913(d) (2007).
"Information  from  these  'other  sources'
cannot    establish    the    existence    of    a
medically     determinable     impairment,"
according to SSR 06-03p.  "Instead, there
must  be  evidence  from  an  'acceptable
medical  source'  for this purpose.  However,
information from such 'other sources' may
be  based  on  special  knowledge  of  the
individual and may provide insight into the
severity  of  the  impairment(s)  and  how  it
affects    the    individual's    ability    to
function."

<u>Sloan v. Astrue</u>, 499 F.3d 883, 888 (8th Cir. 2007).  The <u>Sloan</u>

Court went on to say, "[i]n general, according to the ruling,

the factors for considering opinion evidence include:  [h]ow

long the source has known and how frequently the source has

seen the individual; [h]ow consistent the opinion is with

other evidence; [t]he degree to which the source presents

relevant evidence to support an opinion; [h]ow well the source

explains the opinion; [w]hether the source has a specialty or

area of expertise related to the individual's impairment(s);
and [a]ny other factors that tend to support or refute the
opinion." <u>Sloan</u>, 499 F.3d at 889. The Court cannot accept
Ms. Bahlman's legal conclusion, as that is a subject left to
the ALJ, however, the Court recognizes that Ms. Bahlman is
well acquainted with Mr. Hildebrand's situation and her
thoughts are consistent with Dr. Crowley and Dr. Conditt. In
fact, it seems from the record that the only two medical
professionals who have downplayed the extent of Mr.
Hildebrand's mental and emotional problems are the two
consulting sources that the ALJ gave substantial weight to.
That conclusion is clearly out of line with the law, cited
above, which states that, generally, treating and examining
sources are entitled to greater weight than consultants.

Accordingly, the Court is persuaded that Dr. Conditt's
evaluation is consistent with the record. The ALJ's decision
to grant it only "some" weight, while giving substantial
weight to the non-examining sources, is not supported by
substantial evidence and was an error.

## C. Hypothetical

When questioned by the ALJ, the vocational expert testified that Mr. Hildebrand would be able to perform various unskilled light work, such as a collector-operator. Docket No. 7, Tr. 62. However, when the hypothetical was modified to included a limitation that Mr. Hildebrand could only sit or stand for thirty minutes at a time, the vocational expert testified that no jobs existed that would fit the given criteria. Docket No. 7, Tr. 63. Additionally, when Mr. Hildebrand's attorney questioned the vocational expert and included more of Mr. Hildebrand's mental and emotional limitations, the vocational expert testified that no jobs exist in the national economy that Mr. Hildebrand could perform. Docket No. 7, Tr. 63-64.

As has been repeatedly stated, "[a] vocational expert's testimony constitutes substantial evidence when it is based on a hypothetical that accounts for all of the claimant's proven impairments." Buckner v. Astrue, 646 F.3d 549, 560-61 (8th Cir. 2011). "[T]he hypothetical need not frame the claimant's impairments in the specific diagnostic terms used in medical reports, but instead should capture the concrete consequences

of those impairments." Id. (quoting Hulsey v. Astrue, 622
F.3d 917, 922 (8th Cir. 2010)).

Based on the foregoing analysis regarding credibility and
medical evidence, the Court is persuaded that the ALJ failed
to properly articulate Mr. Hildebrand's limitations in the
hypothetical question(s) to the vocational expert. The
hypothetical questions that most closely stated all of Mr.
Hildebrand's limitations were those posed to the vocational
expert by Mr. Hildebrand's attorney. In response to those
questions, the vocational expert stated that no jobs exist
that Mr. Hildebrand could perform.

## VI. CONCLUSION

It is clear the ALJ erred in the credibility, medical
evidence and RFC sections discussed above. The question thus
becomes whether this Court should remand for further
consideration or solely for the purpose of awarding benefits.

This Court has the authority to reverse a decision of the
Commissioner, "with or without remanding the cause for
rehearing," but the Eighth Circuit has held that a remand for
an award of benefits is appropriate only where "the record
'overwhelmingly supports'" a finding of disability. 42 U.S.C.
405(g); Buckner v. Apfel, 213 F.3d 1006, 1011 (8th Cir. 2000)

(citing <u>Thompson v. Sullivan</u>, 957 F.2d 611, 614 (8th Cir. 1992)).

The Court has considered the entire record, the parties' briefs, and the arguments presented at hearing. When the medical evidence is considered along with the Plaintiff's credible testimony, this Court is persuaded that the overwhelming evidence supports a finding of disability.

**Therefore, the decision of the ALJ is reversed and remanded solely for the calculation of benefits from Plaintiff's claimed onset of disability.**

Application for attorney fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 (EAJA), must be filed within thirty (30) days of the entry of final judgment in this action. Thus, unless this decision is appealed, if plaintiff's attorney wishes to apply for EAJA fees, it must be done within thirty (30) days of the entry of the final judgment in this case.

**IT IS SO ORDERED** this 14th day of April, 2014.

Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa